JAMES LOGSDON, APPELLANT, V. ISCO COMPANY AND AMERICAN MOTORIST INSURANCE COMPANY, APPELLEES.

618 N.W. 2d 667

Filed October 27, 2000. No. S-00-035.

Elizabeth A. Govaerts, of Vincent M. Powers & Associates, for appellant.

Walter E. Zink II and Darla S. Ideus, of Baylor, Evnen, Curtiss, Grimit & Witt, for appellees.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

GERRARD, J.

## NATURE OF CASE

James Logsdon, the appellant, was injured at his workplace when he fell while walking during a morning break. The cause of Logsdon's fall is unknown. This case presents the question whether unexplained falls in the course of employment are compensable under the Nebraska Workers' Compensation Act.

## FACTUAL AND PROCEDURAL BACKGROUND

At the time of his accident, Logsdon had been employed by ISCO Company (ISCO), the appellee, for 14 years as a prototype machinist. On the morning of June 20, 1997, Logsdon was walking around the periphery of the ISCO building during his morning break. ISCO encouraged its employees to walk to keep them healthy and alert.

While Logsdon was walking, there were some people walking behind him with whom Logsdon was acquainted. Logsdon testified, "I turned around to talk to them; next thing I knew, I was in the ambulance. I don't even remember falling. It's not even in my memory." The record contains no other evidence indicating how or why Logsdon fell. Logsdon suffered a frac-

tured skull and associated complications. He has completely recovered from those injuries except for a degree of permanent hearing loss.

Logsdon filed a petition in the Workers' Compensation Court seeking a determination of benefits. The single judge found that Logsdon's injury was compensable and awarded him benefits. The review panel reversed the judgment of the single judge and ordered that Logsdon's petition be dismissed, determining, based upon this court's decision in *Cochran v. Bellevue Bridge Commission*, 174 Neb. 761, 119 N.W.2d 292 (1963), that unexplained falls were purportedly not compensable in Nebraska. Logsdon perfected this appeal, and we subsequently granted Logsdon's petition to bypass the Nebraska Court of Appeals.

## ASSIGNMENT OF ERROR

Logsdon assigns that the review panel erred in holding that injuries sustained in an unexplained fall occurring within the scope and course of employment were not compensable under the Nebraska Workers' Compensation Act.

## STANDARD OF REVIEW

An appellate court may modify, reverse, or set aside a Workers' Compensation Court decision only when (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court did not support the order or award. *Ramsey v. State*, 259 Neb. 176, 609 N.W.2d 18 (2000); *Owen v. American Hydraulics*, 258 Neb. 881, 606 N.W.2d 470 (2000). In determining whether to affirm, modify, reverse, or set aside a judgment of the Workers' Compensation Court review panel, a higher appellate court reviews the findings of fact of the single judge who conducted the original hearing; the findings of fact of the single judge will not be disturbed on appeal unless clearly wrong. See, *Bottolfson v. Bag 'N Save*, 259 Neb. 124, 608 N.W.2d 171 (2000); *Zessin v. Shanahan Mechanical & Elec.*, 251 Neb. 651, 558 N.W.2d 564 (1997). An appellate court is obligated in workers' compensation cases to make its own deter-

minations as to questions of law. *Bottolfson v. Bag 'N Save, supra.*

ANALYSIS

 Neb. Rev. Stat. § 48-101 (Reissue 1998) compensates injury caused an employee by an accident arising out of and in the course of his or her employment. *Torres v. Aulick Leasing,* 258 Neb. 859, 606 N.W.2d 98 (2000). In a workers' compensation case, the plaintiff must establish by a preponderance of the evidence that the injury for which an award is sought arose out of and in the course of employment. *Owen v. American Hydraulics, supra; Frank v. A & L Insulation,* 256 Neb. 898, 594 N.W.2d 586 (1999).

 The two phrases "arising out of" and "in the course of" in § 48-101 are conjunctive; in order to recover, a claimant must establish by a preponderance of the evidence that both conditions exist. *Cox v. Fagen Inc.,* 249 Neb. 677, 545 N.W.2d 80 (1996). The phrase "arising out of," as used in § 48-101, describes the accident and its origin, cause, and character, i.e., whether it resulted from the risks arising within the scope of the employee's job; the phrase "in the course of," as used in § 48-101, refers to the time, place, and circumstances surrounding the accident. *Cox v. Fagen Inc., supra.*

 There is no factual dispute in the instant case; the single judge found, and the parties agree, that the cause of Logsdon's fall is unexplained. Similarly, ISCO does not contest that Logsdon was "in the course of" his employment, within the meaning of § 48-101, at the time of his accident. Thus, the question for this court is whether an unexplained fall, in the course of employment, is "arising out of" the employment within the meaning of § 48-101. In making this determination, we note that the terms of the Nebraska Workers' Compensation Act are to be broadly construed to accomplish the beneficent purpose of the act. See *Miller v. E.M.C. Ins. Cos.,* 259 Neb. 433, 610 N.W.2d 398 (2000).

 All risks causing injury to an employee can be placed within three categories: (1) *employment related*—risks distinctly associated with the employment; (2) *personal*—risks personal to the claimant, e.g., idiopathic causes; and (3) *neutral*—a risk that

is neither distinctly associated with the employment nor personal to the claimant. See, *Monahan v. United States Check Book Co.*, 4 Neb. App. 227, 540 N.W.2d 380 (1995); 1 Arthur Larson & Lex K. Larson, Larson's Workers' Compensation Law § 4.00 (2000). Harm that arises from risks distinctly associated with the employment is universally compensable. See *id.* Harm that can be attributed to personal or idiopathic causes is universally non-compensable. See *id.* It is within the neutral category that most controversy in modern compensation law occurs. 1 Larson & Larson, *supra.* In Nebraska, harm that arises from neutral risks (a risk having no particular employment or personal character) is generally compensable. See *Monahan v. United States Check Book Co., supra,* citing *Nippert v. Shinn Farm Constr. Co.,* 223 Neb. 236, 388 N.W.2d 820 (1986). See, also, *Nunn v. Texaco Trading & Transp.,* 3 Neb. App. 101, 523 N.W.2d 705 (1994).

The main issue presented here is whether an injury without an explanation is a compensable neutral injury. Courts have taken three approaches in addressing the "arising out of" element in unexplained-fall cases. One approach requires the worker to rule out idiopathic causes for the fall, and if he or she carries that burden, an inference arises that the fall arose out of the employment. See, e.g., *Phil A. Livesley Co. v. Russ,* 296 Or. 25, 672 P.2d 337 (1983).

A second approach places the burden on the employee to show a causal connection between the injury and the employment. This is the most difficult burden of causation for an employee to meet, and benefits will be denied where a causal connection is not established. See, e.g., *Brickson v. ILHR Department,* 40 Wis. 2d 694, 162 N.W.2d 600 (1968).

A third approach, which appears to be the majority approach in unexplained-fall cases, employs the positional risk doctrine. See, e.g., *Circle K Store No. 1131 v. Indus. Com'n,* 165 Ariz. 91, 796 P.2d 893 (1990). Under this doctrine, an employee's injuries are compensable as long as employment duties put the employee in a position that the employee might not otherwise be in which exposes the employee to a risk, even though the risk is not greater than that of the general public. *Id.*

We have, in fact, adopted the positional risk doctrine in the context of injuries arising from neutral risks. In *Nippert v. Shinn*

*Farm Constr. Co., supra*, the plaintiff was injured when the construction site at which he was employed was struck by a tornado. In determining that the plaintiff's injuries were compensable, this court overruled *McGinn v. Douglas County Social Services Admin.*, 211 Neb. 72, 317 N.W.2d 764 (1982), and adopted the positional risk doctrine. See *Nippert v. Shinn Farm Constr. Co., supra*. Prior to *Nippert*, Nebraska courts used the "increased risk" test to determine when an injury arose out of the employment. See *McGinn v. Douglas County Social Services Admin., supra*. The "increased risk" test focuses on whether a claimant's work increased the risk of injury. It is a quantitative determination that asks whether the claimant was more exposed to the risk than was the general public. See *Crow v. The Americana Crop Hail Pool, Inc.*, 176 Neb. 260, 125 N.W.2d 691 (1964), *overruled, Nippert v. Shinn Farm Constr. Co., supra*.

██ In rejecting the "increased risk" test, we reasoned:

" '[W]hen one in the course of his [or her] employment is reasonably required to be at a particular place at a particular time and there meets with an accident, although one which any other person then and there present would have met with irrespective of his [or her] employment, that accident is one "arising out of" the employment of the person so injured.' "

*Nippert v. Shinn Farm Constr. Co.*, 223 Neb. 236, 238-39, 388 N.W.2d 820, 822 (1986). This but-for reasoning is the foundation of the positional risk doctrine. Under this doctrine, a claimant is not required to rule out idiopathic causes, i.e., preexisting infirmities. The positional risk doctrine has been adopted by many jurisdictions based on the principle that employees who are on the job and performing duties for their employers should be compensated for injuries occurring in the course thereof.

██ The positional risk doctrine further proceeds on the rationale that the particular source of injury is neutral because the nature of a known risk is associated with neither the employment nor the employee personally. *Svehla v. Beverly Enterprises*, 5 Neb. App. 765, 567 N.W.2d 582 (1997). Similarly, a risk may be classified as neutral because the nature of the cause of harm may be unknown. 1 Arthur Larson & Lex K. Larson, Larson's Workers' Compensation Law § 7.04[1][a]

(2000). Fault concepts have no bearing in this analysis. Professor Larson correctly observes that "where the neutral-risk concept has been accepted for other purposes, a lot of confusion, circumlocutions, and fictions could be avoided in the unexplained-fall cases by merely accepting the proposition that what is unexplained is neutral." 1 Larson & Larson, *supra*, § 7.04[1][c] at 7-21 to 7-22.

> The commonest example of [a neutral risk where the nature of the cause of harm is unknown] is the unexplained fall in the course of employment. If an employee falls while walking down the sidewalk or across a level factory floor for no discoverable reason, the injury resembles that from . . . positional risks in this respect: The particular injury would not have happened if the employee had not been engaged upon an employment errand at the time. In a pure unexplained-fall case, there is no way in which an award can be justified as a matter of causation theory except by a recognition that this but-for reasoning satisfies the "arising" requirement. In appraising the extent to which courts are willing to accept this general but-for theory, then, it is significant to note that most courts confronted with the unexplained-fall problem have seen fit to award compensation.

1 Larson & Larson, *supra*, § 7.04[1][a] at 7-15. See, e.g., *Circle K Store No. 1131 v. Indus. Com'n*, 165 Ariz. 91, 796 P.2d 893 (1990); *Waller v. Mayfield*, 37 Ohio St. 3d 118, 524 N.E.2d 458 (1988); *Moore v. Darling Store Fixtures*, 22 Ark. App. 21, 732 S.W.2d 496 (1987); *Taylor v. Twin City Club*, 260 N.C. 435, 132 S.E.2d 865 (1963).

Similarly, Professor Larson maintains "the only rule that is consistent with the positional-risk doctrine" is

> the rule that an unexplained fall, being attributable neither to the employment nor to the claimant personally, is a neutral risk. It is no answer to this to say that the burden is on the claimant to prove his [or her] case. He [or she] has proved his [or her] case when he [or she] proves an injury by accident in the course of employment from a neutral risk—as much so when the neutral risk is an unexplained event as when it is an arrow out of nowhere.

1 Larson & Larson, *supra*, § 7.04[1][b] at 7-20. We agree.

As noted above, this court adopted the positional risk doctrine, and accepted the theory of neutral risks, in *Nippert v. Shinn Farm Constr. Co.*, 223 Neb. 236, 388 N.W.2d 820 (1986). We conclude that because the cause of an unexplained fall is unknown, the fall must be attributed to a neutral risk, i.e., one neither distinctly personal to a claimant nor associated with the claimant's employment. We reaffirm our prior holding that in the case of an injury arising from a neutral risk, the positional risk doctrine applies. Thus, it logically follows that if the "in the course of" employment test is met in a purely unexplained-fall case, the injury will be presumed to "arise out of" the employment. In the instant case, for example, Logsdon would not have been at the place of injury *but for* the duties of his employment. Consequently, a presumption arises that his injuries "arose out of" his employment, and this presumption was not rebutted by evidence of any idiopathic cause or other risk personal to the claimant.

In urging this court to reach a contrary conclusion, ISCO relies, as did the review panel, on *Cochran v. Bellevue Bridge Commission*, 174 Neb. 761, 119 N.W.2d 292 (1963). In that case, the plaintiff was the widow of an employee with a history of heart disease and dizzy spells. The plaintiff's husband was making a deposit at a local bank, in the course of employment, when he fell to the ground and fractured his skull. *Id.* The autopsy revealed that the skull fracture was the cause of death. *Id.* In affirming the trial court's denial of benefits, this court stated:

> This record discloses no evidence on behalf of the plaintiff that the cause of the fall was industry-related. While the plaintiff's evidence attempted to establish an unexplained fall, that would not be sufficient under the law in this jurisdiction. The record shows that [the plaintiff's husband] during his lifetime did suffer from a type of heart disease as heretofore mentioned, and in the absence of any other explanation for the fall, [the plaintiff's husband] could have fainted or blacked out, and fallen and hit his head on the cement sidewalk. The same thing could have happened at home or any other place he happened to be at the time he sustained an attack. There was no causal con-

nection between the fall and the employment in which [the plaintiff's husband] was engaged in behalf of [his employer].

*Id.* at 770, 119 N.W.2d at 298.

ISCO relies on the above-quoted language for the proposition that unexplained falls are noncompensable. An examination of *Cochran v. Bellevue Bridge Commission, supra,* however, reveals that this court did not use an unexplained-fall analysis, but, instead, the court reached its conclusion by relying on evidence of a possible idiopathic origin to the fall.

Professor Larson is quick to distinguish between unexplained falls and "idiopathic" falls. Unexplained-fall cases begin with a completely neutral origin of a mishap, while idiopathic-fall cases begin with an origin which is admittedly personal and which therefore requires some affirmative employment contribution to offset the prima facie issue of personal origin. *Svehla v. Beverly Enterprises,* 5 Neb. App. 765, 567 N.W.2d 582 (1997). See, *Chicago Tribune Co. v. Industrial Com.,* 136 Ill. App. 3d 260, 483 N.E.2d 327, 91 Ill. Dec. 45 (1985) (explaining confusion between unexplained-fall and idiopathic-fall cases); 1 Arthur Larson & Lex K. Larson, Larson's Workers' Compensation Law § 7.04[1][b] (2000). See, also, e.g., *Waller v. Mayfield,* 37 Ohio St. 3d 118, 524 N.E.2d 458 (1988); *Moore v. Darling Store Fixtures,* 22 Ark. App. 21, 732 S.W.2d 496 (1987) (distinguishing between unexplained and idiopathic falls). When there is at least some evidence of a possibility of a personal or idiopathic factor contributing to the fall, the fall is not properly categorized as a purely unexplained fall. *Svehla v. Beverly Enterprises, supra.* See, also, 1 Larson & Larson, *supra.*

*Cochran v. Bellevue Bridge Commission, supra,* is distinguishable from the instant case in that, in *Cochran,* there was evidence of an idiopathic factor causing or contributing to the fall. Therefore, *Cochran* was not a purely unexplained-fall case and does not support the construction placed upon it by ISCO and by the review panel. Compare *Scott v. Young Men's Christian Assn.,* 195 Neb. 746, 240 N.W.2d 587 (1976) (award of benefits affirmed where evidence of idiopathic condition was insufficient to support inference that condition caused otherwise

unexplained fall). Nonetheless, to the extent that *Cochran v. Bellevue Bridge Commission*, 174 Neb. 761, 119 N.W.2d 292 (1963), can be read to infer that purely unexplained-fall cases are not compensable in Nebraska, it is overruled.

In the instant case, we are presented with a purely unexplained fall, which can be attributed only to a neutral risk. Consistent with our adoption of the positional risk doctrine, we conclude that Logsdon's injuries resulted from a neutral risk and that his injuries are presumed to "arise out of" his employment at ISCO. This presumption was not rebutted by evidence of any idiopathic cause or other risk personal to Logsdon. Therefore, Logsdon's injuries are compensable under the Nebraska Workers' Compensation Act. There was not sufficient evidence in the record to warrant the judgment of reversal by the review panel. See Neb. Rev. Stat. § 48-185 (Reissue 1998). To the contrary, the single judge's award was warranted by the evidence, and the review panel erred in reversing that judgment.

## CONCLUSION

Logsdon suffered an unexplained fall in the course of his employment which was compensable under the Nebraska Workers' Compensation Act. The judgment of the Workers' Compensation Court review panel is reversed, and the cause is remanded with directions to affirm the award entered by the single judge and to determine any statutory interest and fees to which Logsdon may be entitled.

REVERSED AND REMANDED WITH DIRECTIONS.