Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
07/20/2018 09:09 AM CDT

Miko Maroulakos, appellant, v.
Walmart Associates, Inc., appellee.

___ N.W.2d ___

Filed July 20, 2018.    No. S-17-1110.

1. **Workers' Compensation: Appeal and Error.** Pursuant to Neb. Rev. Stat. § 48-185 (Cum. Supp. 2016), an appellate court may modify, reverse, or set aside a Workers' Compensation Court decision only when (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award.

2. ____: ____. Determinations by a trial judge of the Workers' Compensation Court will not be disturbed on appeal unless they are contrary to law or depend on findings of fact which are clearly wrong in light of the evidence.

3. **Workers' Compensation.** The Nebraska Workers' Compensation Act provides that when an employee suffers personal injury caused by accident or occupational disease, arising out of and in the course of his or her employment, such employee shall receive compensation from his or her employer if the employee was not willfully negligent at the time of receiving such injury.

4. **Workers' Compensation: Words and Phrases.** The phrase "arising out of" describes the accident and its origin, cause, and character, i.e., whether it resulted from the risks arising within the scope or sphere of the employee's job.

5. **Workers' Compensation.** All risks causing injury to an employee can be placed within three categories: (1) employment related—risks distinctly associated with the employment; (2) personal—risks personal to the claimant, e.g., idiopathic causes; and (3) neutral—a risk that is neither distinctly associated with the employment nor personal to the claimant.

6. ____. Generally, harm that can be attributed solely to personal or idiopathic causes is universally noncompensable.
7. ____. Unexplained-fall cases begin with a completely neutral origin of a mishap, while idiopathic-fall cases begin with an origin which is admittedly personal and which therefore requires some affirmative employment contribution to offset the prima facie issue of personal origin.
8. **Appeal and Error.** Absent plain error, when an issue is raised for the first time in an appellate court, it will be disregarded inasmuch as the trial court cannot commit error regarding an issue never presented and submitted to it for disposition.
9. ____. Plain error is plainly evident from the record and of such a nature that to leave it uncorrected would result in damage to the integrity, reputation, or fairness of the judicial process.
10. **Workers' Compensation.** A workers' compensation award cannot be based on possibility or speculation, and if an inference favorable to the claimant can be reached only on the basis thereof, then the claimant cannot recover.
11. ____. A finding in regard to causation of an injury is one for determination by the Workers' Compensation Court as the finder of fact.

Appeal from the Workers' Compensation Court: JAMES R. COE, Judge. Affirmed.

David M. Handley, of Watson & Carroll, P.C., L.L.O., for appellant.

Jennifer S. Caswell and Zachary W. Anderson, of Baylor, Evnen, Curtiss, Grimit & Witt, L.L.P., for appellee.

HEAVICAN, C.J., MILLER-LERMAN, CASSEL, STACY, FUNKE, and PAPIK, JJ., and SCHREINER, District Judge.

FUNKE, J.

Miko Maroulakos appeals from a Workers' Compensation Court's order, which determined his injuries did not "arise out of" his employment. At trial, Maroulakos argued only that his injury arose out of employment, because his fall resulted from a risk of employment, but on appeal, he argues that his injury arose out of employment under the "increased-danger" rule, because he fell into an industrial shelving unit. We hold

Maroulakos waived this argument by failing to present it to the compensation court. Therefore, we affirm.

## I. BACKGROUND

In August 2014, Maroulakos was working for Walmart Associates, Inc. (Walmart), as an overnight support manager. After coming back from his meal break, Maroulakos felt overheated, exhausted, and lightheaded. He told some coworkers that he would go home once he finished his overnight stock audits. Video surveillance captured Maroulakos walking past product aisles, approaching a product shipper, moving to the right of and away from the shipper, and then falling into a product aisle.

While on the floor, Maroulakos appeared to have a seizure lasting at least 30 seconds. As a result of the accident, Maroulakos sustained a facial laceration, sinus fractures, and possibly a traumatic brain injury causing neurocognitive impairment.

Maroulakos' amended complaint requested workers' compensation benefits, alleging personal injuries that resulted from his tripping over a pallet in the course of his employment. At trial, Maroulakos testified he had no memory of the actual fall and relied on Walmart's video surveillance, his medical reports, and a report by neurologist Srinivasan Mani, M.D.

Mani's report stated that based on Maroulakos' medical history and the video surveillance, it appeared Maroulakos tripped and fell and sustained a head injury, which caused a subsequent seizure. Mani diagnosed Maroulakos as likely suffering from an associated cognitive disturbance, which he opined resulted from the fall. The report, however, made no mention of Maroulakos' hitting an industrial shelving unit as he fell or whether his injuries were inconsistent with falling to the floor. The only reference to Maroulakos' hitting a shelf was in a "History of Present Illness" in one of the medical reports, which contained the following statement: "Patient fell on the end of shelf and sustained facial laceration."

Walmart called two employees who had witnessed Maroulakos' fall. One witness stated that she was standing in a product aisle 2 feet from Maroulakos when he walked face first into an industrial shelving unit and fell backward onto the floor. She stated she did not see Maroulakos trip over anything or remember a pallet on the floor. The other witness was 40 to 50 feet away but looked toward Maroulakos, in the midst of falling, after he heard grunting and other audible noises from Maroulakos' direction. The witness stated that Maroulakos fell face first into a shelf but that he did not remember seeing a pallet on the floor.

Evidence presented at trial showed that when Maroulakos was 12 years old, he contracted viral encephalitis, which required him to undergo at least seven brain surgeries to remove a cyst and implant a shunt. Because Maroulakos suffered at least one seizure during these surgeries, he was prescribed antiseizure medication, which he stopped taking after high school. Maroulakos testified he did not have any seizures or related health issues between being removed from antiseizure medication and his August 2014 fall, at which time he was 44 years old.

The compensation court determined that the only issue presented was whether Maroulakos' accident arose out of employment. It rejected Maroulakos' argument and Mani's interpretation of the video that he had tripped over a pallet. Instead, the court ruled that the surveillance video showed that "[Maroulakos] begins to rock back and forth on his feet as he walks and staggers briefly . . . then falls to the ground." The court determined Maroulakos' fall resulted from an idiopathic seizure and syncope event that was personal to him and not compensable under the Nebraska Workers' Compensation Act.[1] The court dismissed Maroulakos' complaint with prejudice.

---

[1] Neb. Rev. Stat. §§ 48-101 to 48-1,117 (Reissue 2010, Cum. Supp. 2016 & Supp. 2017).

Maroulakos perfected a timely appeal. We removed the case to our docket on our own motion pursuant to our authority to regulate the caseloads of the Nebraska Court of Appeals and this court.[2]

## II. ASSIGNMENT OF ERROR

Maroulakos assigns error to the trial court's determination that his accident did not arise out of his employment.

## III. STANDARD OF REVIEW

[1] Pursuant to § 48-185, an appellate court may modify, reverse, or set aside a Workers' Compensation Court decision only when (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award.[3]

[2] Determinations by a trial judge of the Workers' Compensation Court will not be disturbed on appeal unless they are contrary to law or depend on findings of fact which are clearly wrong in light of the evidence.[4]

## IV. ANALYSIS

Maroulakos admits that at trial, he focused on whether he tripped over a pallet instead of whether he struck a shelf during his fall. He further admits that he did not argue before the trial court that his injury arose out of employment under the increased-danger rule. However, he argues that the Court of Appeals has held in *Svehla v. Beverly Enterprises*[5] and

---

[2] See Neb. Rev. Stat. § 24-1106(3) (Supp. 2017).

[3] *Greenwood v. J.J. Hooligan's*, 297 Neb. 435, 899 N.W.2d 905 (2017).

[4] *Id.*

[5] *Svehla v. Beverly Enterprises*, 5 Neb. App. 765, 567 N.W.2d 582 (1997).

*Lucas v. Anderson Ford*[6] that when an employment hazard causes or increases the severity of an injury sustained from an idiopathic accident, the injury becomes compensable as arising out of employment. He further contends that because evidence showed that he sustained facial and brain injuries by landing face first on an industrial shelving unit, the Workers' Compensation Court was required to apply the rule from *Svehla* and *Lucas* after determining his fall resulted from an idiopathic condition.

Walmart does not dispute that the compensation court was bound by the rule adopted in *Svehla* and *Lucas*, but it argues Maroulakos had the burden of proving that he, in fact, fell into the shelving unit and that doing so increased the injuries he suffered from his idiopathic fall.

[3] The Nebraska Workers' Compensation Act provides that when an employee suffers personal injury caused by accident or occupational disease, arising out of and in the course of his or her employment, such employee shall receive compensation from his or her employer if the employee was not willfully negligent at the time of receiving such injury.[7] Section 48-151(2) provides that there is no presumption that an employee's injury sustained in the course of his or her employment was in fact caused by the employment, and a claimant has the burden of proving an injury arose out of employment by a preponderance of the evidence.[8]

[4-6] The phrase "arising out of" describes the accident and its origin, cause, and character, i.e., whether it resulted from the risks arising within the scope or sphere of the employee's job.[9] All risks causing injury to an employee can be placed

---

[6] *Lucas v. Anderson Ford*, 13 Neb. App. 133, 689 N.W.2d 354 (2004).

[7] § 48-101. See *Hintz v. Farmers Co-op Assn.*, 297 Neb. 903, 902 N.W.2d 131 (2017).

[8] See, also, *Hintz, supra* note 7.

[9] *Potter v. McCulla*, 288 Neb. 741, 851 N.W.2d 94 (2014).

within three categories: (1) *employment related*—risks distinctly associated with the employment; (2) *personal*—risks personal to the claimant, e.g., idiopathic causes; and (3) *neutral*—a risk that is neither distinctly associated with the employment nor personal to the claimant.[10] Harm that arises from risks distinctly associated with the employment is universally compensable.[11] Generally, harm that can be attributed solely to personal or idiopathic causes is universally noncompensable.[12] Harm that arises from neutral risks is generally compensable.[13]

As noted in *Maradiaga v. Specialty Finishing*[14]:

Generally, a risk may be classified as "'neutral'" for either of two reasons: (1) "[t]he nature of the risk may be known, but may be associated neither with the employment nor the employee personally," or (2) "the nature of the cause of harm may be simply unknown." . . . Examples of neutral risks of the first type are stray bullets, lightning, or hurricanes, . . . while the most common example of a neutral risk of the second type is a purely unexplained fall . . . .

[7] In *Logsdon v. ISCO Co.*,[15] we considered whether an individual's purely unexplained fall in the course of his employment arose out of his employment. We distinguished purely unexplained falls causing injuries from idiopathic falls, explaining: "Unexplained-fall cases begin with a completely neutral origin of a mishap, while idiopathic-fall cases begin

---

[10] *Logsdon v. ISCO Co.*, 260 Neb. 624, 618 N.W.2d 667 (2000).

[11] *Id.*

[12] See *id.*

[13] *Id.*

[14] *Maradiaga v. Specialty Finishing*, 24 Neb. App. 199, 206, 884 N.W.2d 153, 159 (2016), citing 1 Arthur Larson & Lex K. Larson, Larson's Workers' Compensation Law §§ 4.03 and 7.04[1][a] (2016).

[15] *Logsdon, supra* note 10.

with an origin which is admittedly personal and which therefore requires some affirmative employment contribution to offset the prima facie issue of personal origin."[16]

A vast majority of courts nationally have adopted the increased-danger rule, which provides that "the effects of [an idiopathic-caused] fall are compensable if the employment places the employee in a position increasing the dangerous effects of such a fall."[17] The Nebraska Court of Appeals considered this rule in *Svehla* and *Lucas*, though it did not reference the increased-danger rule. In both cases, the appellate court considered whether a fall with a potential idiopathic cause became compensable as a result of the contribution of an employment condition.

In *Svehla*, the employee fell on the level ground of her employer's premises while walking to her vehicle after work and died from her injuries.[18] The trial court concluded that the evidence failed to establish the cause of the employee's fall but that the evidence showed her idiopathic condition was just as likely to have caused the fall as the employee's tripping, and it denied compensation.[19]

The appellate court ruled that the compensation court's determination that the fall may have resulted from an idiopathic cause prevented treating the fall as purely unexplained.[20] The court then noted that injuries sustained in an idiopathic fall "are compensable if the employment places the employee in a position increasing the dangerous effects of such a fall, such as on a height, near machinery or sharp corners,

---

[16] *Id.* at 633, 618 N.W.2d at 675, citing *Svehla, supra* note 5.

[17] 1 Arthur Larson et al., Larson's Workers' Compensation Law § 9.01[1] at 9-2 (2017). See § 9.01[4] (citing cases).

[18] *Svehla, supra* note 5.

[19] *Id.*

[20] *Id.*

or in a moving vehicle."[21] Nevertheless, the appellate court agreed with the trial court that the injury was noncompensable because the plaintiff failed to determine how the employee sustained the injury leading to her death.[22]

In *Lucas*, the employee fell when rising from a chair while seated at his desk. The trial court determined that the fall was due to the employee's being hypoglycemic and that the fall resulted in a fractured hip.[23] Though there was no evidence the employee struck the chair or the desk during his fall, the trial court stated in its order, "'I find that the desk and the chair created an increased risk in that the fracture is a result of how one hits the floor, and how one hits the floor is depend[e]nt on what obstacles are present which change the way the plaintiff lands on the floor.'"[24]

The workers' compensation review panel reversed the trial court's order, stating that the trial court was clearly wrong in finding the employee suffered an accident arising out of his employment and finding that there was insufficient evidence "'to remove his idiopathic fall from the application of the general rule that harm that can be attributed to personal or idiopathic causes is universally non compensable.'"[25] The Court of Appeals noted that "[b]ecause the trial court found that [the employee's] fall was not an unexplained fall, but, rather, an idiopathic fall, [the employee] was required to show some affirmative employment contribution to offset the fact that his fall was precipitated by a personal condition."[26] Ultimately however, the appellate court agreed with the

---

[21] *Id.* at 777, 567 N.W.2d at 591. Accord 1 Larson et al., *supra* note 17, § 9.01[1].

[22] *Svehla, supra* note 5.

[23] *Lucas, supra* note 6.

[24] *Id.* at 139, 689 N.W.2d at 360.

[25] *Id.*

[26] *Id.*

review panel that there was no evidence to support the trial court's finding that the employee's risk of injury was increased by getting up from a chair behind a desk when he fell to the ground.[27]

Neither our statements in *Logsdon*[28] nor the Court of Appeals' statements in *Svehla* or *Lucas* support Maroulakos' argument—the court was required to consider whether an employment hazard caused or contributed to his ultimate injury, because it determined an idiopathic condition caused his fall. As stated in *Logsdon*, the presumption is that a personal risk is non-compensable and it is incumbent on the employee to prove an affirmative condition of employment caused or contributed to the ultimate injury.[29] The increased-danger rule may be a valid theory for establishing that an injury arose out of employment, which we need not determine here, but it is a separate theory from arguing a fall was caused by an employment condition or a neutral cause.

[8,9] Absent plain error, when an issue is raised for the first time in an appellate court, it will be disregarded inasmuch as the trial court cannot commit error regarding an issue never presented and submitted to it for disposition.[30] Plain error is plainly evident from the record and of such a nature that to leave it uncorrected would result in damage to the integrity, reputation, or fairness of the judicial process.[31]

[10] The rule of liberal construction of the Nebraska Workers' Compensation Act applies to the law, not to the evidence offered to support a claim by virtue of the law.[32] The rule does not dispense with the necessity that claimant shall

---

[27] *Id.*

[28] *Logsdon, supra* note 10.

[29] See, also, § 48-151(2).

[30] *State v. Lester*, 295 Neb. 878, 898 N.W.2d 299 (2017).

[31] *Id.*

[32] *Smith v. Ruan Transport, Inc.*, 190 Neb. 509, 209 N.W.2d 146 (1973).

prove his right to compensation within the rules above set forth, nor does it permit a court to award compensation where the requisite proof is lacking.[33] A workers' compensation award cannot be based on possibility or speculation, and if an inference favorable to the claimant can be reached only on the basis thereof, then the claimant cannot recover.[34]

As in *Lucas*, there is no evidence in the record that Maroulakos' injuries were caused or aggravated by a hazard of employment. Maroulakos did not present any evidence that his facial and potential brain injuries were inconsistent with a fall to a hard tile floor or that his potential brain injuries did not result solely from his idiopathic condition. Therefore, any finding that the increased-danger rule did apply would have been purely speculative.

Further, Maroulakos did not prove that he struck the industrial shelving unit during his fall. While the employees testifying for Walmart both stated that he fell face first into the shelving unit, there was also video evidence of the fall that did not clearly show that he hit the shelving unit and which contradicted the testimony that he fell backward after making contact with the shelving unit. Additionally, despite one comment in a medical report, there was no medical evidence discussing Maroulakos' making contact with the shelving unit and stating that such was a cause of the injuries.

[11] The trial court ruled that Maroulakos fell to the floor after falling from his syncope event. A finding in regard to causation of an injury is one for determination by the Workers' Compensation Court as the finder of fact.[35] Based on the record before us, this finding was supported by competent evidence.

Thus, the court did not commit plain error by not applying the increased-danger rule, and Maroulakos' assignment of error

---

[33] *Haufe v. American Smelting & Refining Co.*, 163 Neb. 329, 79 N.W.2d 570 (1956).

[34] *Visoso v. Cargill Meat Solutions*, 285 Neb. 272, 826 N.W.2d 845 (2013).

[35] *Miller v. Meister & Segrist*, 255 Neb. 805, 587 N.W.2d 399 (1998).

is without merit because he waived his argument by failing to present it to the compensation court.

## V. CONCLUSION

For the preceding reasons, we affirm the decision of the compensation court.

AFFIRMED.

MILLER-LERMAN, J., concurring.

In cases where a compensation court finds that an accident occurred from an "idiopathic" condition, it logically follows that the compensation court should address the increased-danger rule when there is evidence suggesting that features of the workplace increased the severity of the worker's injuries. The evidence in this case shows the area where Maroulakos fell had an industrial shelving unit proximate to his path of descent to the floor, and two Walmart coworkers testified that they witnessed Maroulakos collide with the shelving. A note in a medical report also suggests that Maroulakos' facial injuries are consistent with falling on the end of a shelf. Although the compensation court found that Manoulakos had an idiopathic condition and "[fell] to the ground," it would have been helpful to address whether Maroulakos hit a shelf on the way down and, if so, whether such hit increased his injuries. However, this specific question was not raised before the compensation court. Therefore, I concur.

SCHREINER, District Judge, joins in this concurrence.